UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

101 West Lombard Street
Baltimore, Maryland 21201
MDD_DRMChambers@mdd.uscourts.gov
(410) 962-7770

July 18, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Peter M. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-2225-DRM

Dear Counsel:

On July 31, 2024, Plaintiff Peter M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF No. 7) and the parties' briefs (ECF Nos. 13, 15, 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on March 27, 2013, alleging a disability onset of March 4, 2013. Tr. 59, 179-82. Plaintiff was initially found disabled beginning on March 4, 2013. Tr. 59-64. Plaintiff's disability benefits ceased as of October 31, 2014, after the SSA determined that Plaintiff worked at substantial gainful activity levels. Tr. 67-68. Plaintiff's disability was subsequently determined to have continued in a determination dated May 4, 2017, because Plaintiff stopped working at substantial gainful activity levels. Tr. 69. On July 25, 2018, Plaintiff was found to be no longer disabled since July 25, 2018, due to medical improvement. Tr. 71-81. This determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer. Tr. 124-33. On May 14, 2020, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38-58. Following the hearing, on October 7, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on July 31, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

*Peter M. v. Bisignano*
Civil No. 24-2225-DRM
July 18, 2025
Page 2

Social Security Act[2] during the relevant time frame. Tr. 18-31. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, and Plaintiff then appealed to this Court on June 4, 2021, Tr. 776-77. This Court remanded Plaintiff's case to the Commissioner on March 14, 2022, with the parties' consent. Tr. 778-81. The Appeals Council remanded Plaintiff's case to an ALJ for further proceedings. Tr. 782-87. On April 18, 2024, a second ALJ held another hearing. Tr. 721-49. On May 23, 2024, that ALJ concluded that Plaintiff was not disabled since July 25, 2018. Tr. 699-713. The second ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "Ordinarily, the SSA employs a five-step sequential evaluation process" to assess disability. *Figgs v. Saul*, No. JMC-20-334, 2021 WL 3930708, at *1 (D. Md. Sept. 2, 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015)). "However, where the SSA granted a claimant benefits and subsequently terminated same, an eight-step continuing disability review evaluation process (for disability insurance benefits claims) and a seven-step continuing disability review evaluation process (for supplemental security income claims) guides the ALJ's analysis." *Id.* (citing 20 C.F.R. § 404.1594). The Court has explained this process as follows:

> At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claimant's impairment is compared to those in the Listing of Impairments [ ]. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is included in the Listing or is equivalent to a listed impairment, disability continues. If the claimant's impairment does not meet or equal a listed impairment, the Commissioner proceeds to step three. At step three, the Commissioner determines whether the claimant has experienced any medical improvement; if so, the Commissioner proceeds to step four, and if not, the Commissioner skips to step five. At step four, the Commissioner determines whether the medical improvement is related to the claimant's ability to work; that is, whether there has been an increase in the claimant's residual functional capacity [ ]. If not, the Commissioner proceeds to step five; if so, the Commissioner skips to step six. At step five—by which point the Commissioner has concluded that the claimant has not experienced medical improvement or the medical improvement is not related to the claimant's ability to work—the [C]ommissioner considers whether any of the exceptions to the medical exceptions to the medical improvement standard apply. 20 C.F.R. §§ 404.1594(d), (e). At step six, provided the medical improvement is related to the claimant's ability to work, the

---
[2] 42 U.S.C. §§ 301 et seq.

*Peter M. v. Bisignano*
Civil No. 24-2225-DRM
July 18, 2025
Page 3

>Commissioner determines whether the claimant's current impairments in combination are severe; if not, the claimant is no longer disabled. If so, the Commissioner proceeds to step seven and assesses the claimant's RFC to determine whether he or she can perform past relevant work experience. If the claimant can perform his or her past relevant work experience, the claimant is not disabled. If the claimant cannot perform past relevant work, however, the Commissioner reaches step eight and considers whether, given the claimant's RFC, age, education, and past experience, the claimant can perform other substantial gainful work.

*Id.* (omissions in original) (quoting *Furdon v. Berryhill*, No. 5:18-cv-BO, 2019 WL 1117908, at *2 (E.D.N.C. Mar. 11, 2019)). "Under each of the continuing disability review evaluation processes, there is no presumption of continuing disability." *Id.* at *2 (citation omitted).

Here, the ALJ first noted that at the time of the comparison point decision ("CPD") date of May 4, 2017—the date on which the SSA had most recently determined that Plaintiff continued to be disabled—Plaintiff had the following medically determinable impairment: Leukemia. Tr. 704. At step one, the ALJ determined that Plaintiff "engaged in substantial gainful activity during several quarters"; however, "there are periods in which [Plaintiff] did not work at SGA levels that [the ALJ] considered." Tr. 704. The ALJ also determined that "since May 4, 2017, [Plaintiff] has had the following medically determinable impairments: leukemia, neuropathy, obesity, and diverticulitis/gastrointestinal (GI) disorder. These are [Plaintiff's] current impairments." Tr. 704. At step two, the ALJ determined that "[s]ince May 4, 2017, [Plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 705. At step three, the ALJ found that "[m]edical improvement occurred on July 25, 2018." Tr. 706. At step four, the ALJ determined that the "medical improvement is related to the ability to work because, by July 25, 2018, [Plaintiff's] CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD." Tr. 706.

Having so determined at step four, the ALJ proceeded to step six. There, the ALJ determined that "[s]ince July 25, 2018, [Plaintiff] has continued to have the severe impairments or combination of impairments listed at finding 4 above[,]" which as noted above, are leukemia, neuropathy, obesity, and diverticulitis/gastrointestinal (GI) disorder. Tr. 704, 706. Despite these impairments, the ALJ determined that Plaintiff, since July 25, 2018, retained the residual functional capacity ("RFC") to: "perform light work as defined in 20 CFR 404.1567(b), except the claimant can frequently perform bilateral foot controls. He can frequently stoop, kneel, crouch and crawl, but not climb." Tr. 706. At step seven, the ALJ determined that Plaintiff was able to perform his past relevant work as a retail store manager (DOT[3] #185.167-046) as generally

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of*

performed, noting that "[t]his work does not require the performance of work-related activities precluded by" Plaintiff's RFC. Tr. 711. At step eight, the ALJ made the alternative finding that Plaintiff could perform other jobs that exist in significant numbers in the national economy. Tr. 712. Therefore, the ALJ concluded that Plaintiff's disability ended on July 25, 2018, and Plaintiff has not become disabled again since that date. Tr. 713.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises one argument on appeal, specifically that the ALJ failed to comply with the Appeals Council's remand order by failing to weigh all medical opinion evidence pursuant to the six factors set forth in 20 C.F.R. § 404.1527(c). ECF No. 13, at 8-20; ECF No. 16, at 1-4. Defendant counters that the ALJ's analysis of the medical opinion evidence comports with the relevant framework. ECF No. 15, at 6-14.

For applications for benefits filed prior to March 27, 2017, ALJs weigh medical opinions in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c). This regulatory framework requires an ALJ first to follow the "treating physician rule," which mandates that the medical opinion of a treating physician be entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at §§ 404.1527(c)(2), 416.927(c)(2). "[T]he treating physician rule is a robust one: '[T]he opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence.'" *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 107 (4th Cir. 2020) (citing *Coffman*, 829 F.2d at 517). At the same time, the treating physician rule "is not absolute," and an ALJ may afford a treating physician's opinion less weight if there is more persuasive contradictory evidence in the record. *Hines v. Barnhart*, 453 F.3d 559, 563 n.2 (4th Cir. 2006) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

---

*Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

"Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the '[l]ength of the treatment relationship and the frequency of examination'; (2) the '[n]ature and extent of the treatment relationship'; (3) '[s]upportability,' i.e., the extent to which the treating physician 'presents relevant evidence to support [the] medical opinion'; (4) '[c]onsistency,' i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to 'issues related to his or her area of specialty'"; and (6) any other factors raised by the parties 'which tend to support or contradict the medical opinion.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384–85 (4th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)(i)–(6)); *see also* 20 C.F.R. § 416.927 (c)(2)(i)–(6). "[A]n ALJ should give adequate attention to each 20 C.F.R. § 404.1527(c) [and § 416.927(c)] factor." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 355 (4th Cir. 2023) (citing *Dowling*, 986 F.3d at 386; *Triplett v. Saul*, 860 F. App'x 855 (4th Cir. 2021)).

In *Shelley C.*, the Fourth Circuit emphasized that "[m]ere acknowledgement of the regulation's existence is insufficient and falls short of the ALJ's duties." *Id.* at 354. Nevertheless, the Fourth Circuit also made clear that a reviewing court is permitted to infer that the ALJ considered the factors based on the opinion as a whole. *See id.* ("From this discussion, we can infer that the ALJ was aware of the examining relationship that existed between Shelley C. and Dr. Beale, which satisfies 20 C.F.R. § 404.1527(c)'s first factor."); *id.* at 355 ("Further, the ALJ also acknowledged that Shelley C. was 'seeing' Dr. Beale. . . . From this, we gather that the ALJ was aware of the examining relationship that existed between Shelley C. and Dr. Beale, thereby satisfying 20 C.F.R. § 404.1527(c)'s first factor.").

Here, Plaintiff argues that the ALJ's evaluation of Dr. Khalek's medical statements amounts to reversible error. *See* ECF No. 13, at 13-20. The Court finds the ALJ's evaluation of Dr. Khalek's medical statements unsupported by substantial evidence. The ALJ evaluated Dr. Khalek's two medical source statements. Tr. 708. In Dr. Khalek's August 2018 statement, Dr. Khalek opined that Plaintiff "developed neuropathy due to his prior chemotherapy and struggled with pain after 3, 8-hour shifts per week." Tr. 708. In Dr. Khalek's September 2019 statement, Dr. Khalek found Plaintiff "with neuropathy and unable to work more than 5 hours at a time." Tr. 708. The ALJ gave both opinions "little weight." Tr. 708.

The ALJ acknowledged elements of Dr. Khalek's treatment relationship with Plaintiff that reveal consideration for its length, frequency, nature, and extent, and for Dr. Khalek's specialty. For length and frequency, the ALJ's decision notes numerous regular and follow-up examinations of Plaintiff by Dr. Khalek from 2017 to 2021. *See* Tr. 707 (noting that Plaintiff "first saw Dr. Khalek every 3 months, beginning in August 2017[,]" but had not seen him since 2021 because Dr. Khalek left the practice); Tr. 708 (observing that Dr. Khalek "would perform surveillance [on Plaintiff] every 3 and 5 months for peripheral blood flow cytometry and every 3 months for clinical visits and blood work."). For Dr. Khalek's specialty and the nature and extent of the relationship, the ALJ acknowledged Dr. Khalek as Plaintiff's "oncologist/hematologist," recounted Plaintiff's

visits with Dr. Khalek from 2017 to 2021, and summarized Dr. Khalek's treatment of Plaintiff in November 2017, February 2018, May 2018, May 2019, and November 2019.  Tr. 707-08.

However, the ALJ's assessment of the supportability and consistency of Dr. Khalek's statements is lacking.  In giving Dr. Khalek's 2018 statement little weight, the ALJ noted that the statement "provides little specifics in terms of limitations."  Tr. 708.  In terms of consistency, the ALJ found Dr. Khalek's 2018 statement "consistent with some of [Plaintiff's] testimony regarding his ability to only work at reduced hours" and found Dr. Khalek's 2019 statement "consistent with [Plaintiff's] testimony, but more than he said he could work today."  Tr. 708.  The ALJ noted that "[w]hile Dr. Khalek references [Plaintiff's] neuropathy as the cause of his reduced work hours, his examination results often show a steady gait and stance, and no focal deficits.  They show [Plaintiff] taking over the counter medication for pain, as he could not tolerate Gabapentin.  The examination results are not specific enough to warrant these limits."  Tr. 708-09.

The Court finds that the ALJ failed to properly analyze the consistency of Dr. Khalek's statements "with the record as a whole," as required pursuant to 20 C.F.R. § 404.1527(c)(4).  Here, the ALJ, in assigning Dr. Khalek's statements little weight, reasoned that Plaintiff's examination results "show a steady gait and stance[.]"  Tr. 708-09.  However, as Plaintiff correctly posits, the ALJ failed to evaluate the consistency of Dr. Valarao's consultative medical examination with Dr. Khalek's statements.  *See* ECF No. 13, at 17 n.10.  As acknowledged by the ALJ, Dr. Valarao found that Plaintiff had neuropathy; was "very extremely obese"; "ambulated with a slow-paced step"; "limped but did not use an assistive device"; and "could heel to heel walk and toe to toe walk, with slight difficulty to complete both."  Tr. 710-11.  However, the ALJ failed to evaluate the consistency of Dr. Khalek's statements regarding Plaintiff's pain from his neuropathy affecting his ability to work full-time with Dr. Valarao's examination.

Moreover, it is not apparent from the ALJ's decision how the ALJ determined that Plaintiff could work for the duration of an 8-hour workday.  Moreover, it is unclear to the Court why the ALJ rejected Dr. Khalek's findings that Plaintiff could only work at reduced hours because these statements "appears more for the employer benefit[.]"  *See* Tr. 708.  A careful review of the objective evidence reveals that Dr. Khalek's 2018 statement specifically is addressed to the Social Security Administration.  *See* Tr. 461.  As such, because the ALJ's finding is not based on "evidence which a reasoning mind would accept as sufficient," it is not supported by substantial evidence.  *Laws*, 368 F.2d at 642.

The ALJ's errors are not harmless.  Had the ALJ appropriately considered the consistency of Dr. Khalek's statements, they may have come to a different determination of the weight these opinions should be given.  This revised weight could have, in turn, altered Plaintiff's RFC, and potentially impacted the determination of whether Plaintiff is disabled.  For example, while the RFC does not expressly mention standing or walking, a "limitation to light work implicitly includes a finding that the plaintiff [can] stand or walk off and on for a total of approximately six hours of an eight-hour workday[.]"  *Robinson v. Astrue*, No. 2:10-185-DCN, 2011 WL 4368416, at *8 (D.S.C. Feb. 18, 2011) (collecting cases), *report and recommendation adopted*, No. 2:10-185-DCN, 2011 WL 4368396 (D.S.C. Sept. 19, 2011).  As such, a proper analysis of Dr. Khalek's

statements may alter Plaintiff's light work RFC if Dr. Khalek's statements regarding Plaintiff's inability to work an 8-hour workday is deemed persuasive. Therefore, remand is necessary so that the ALJ can provide an analysis of Dr. Khalek's statements that fully comports with 20 C.F.R. § 404.1527(c).[4]

Because the case is being remanded based on the improper analysis of Dr. Khalek's statements, I need not address Plaintiff's other arguments related to the ALJ's evaluation of the other medical evidence. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge

---

[4] The Court notes that the Appeals Council's remand order instructs that "[a]s appropriate, the Administrative Law Judge may request the treating and nontreating sources provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1520b)." *See* Tr. 784-85.